# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **OWNERS INSURANCE COMPANY,** <br><br> Plaintiff, <br><br> vs. <br><br> **JACOB TAYLOR DOCKSTADER,** <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:18CV173DAK <br><br> Judge Dale A. Kimball |

This matter is before the court on Plaintiff Owner Insurance Company's Motion for Summary Judgment. On February 27, 2019, the court held a hearing on the motion. At the hearing, Plaintiff Owners Insurance Company was represented by Anna Nelson, Defendant Dockstader was represented by William E. Frazier, and Intervenor Defendant Thomas Brooks was represented by Michael W. Young and Chad C. Baker. After hearing argument, the court took the matter under advisement. The court has considered the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motions. Now being fully advised, the court issues the following Memorandum Decision and Order.

## BACKGROUND

On October 14, 2014, Defendant Jacob Taylor Dockstader hit Thomas Brooks in the head with a 15-pound dumbbell at Desert Palms Health & Fitness Club in St. George, Utah. The blow left Brooks unconscious and bleeding from his head. Brooks was transported to the hospital, where he underwent emergency surgery and remained hospitalized for a week. The

State of Utah charged Dockstader with felony aggravated assault, Utah Code Ann. §§ 76-5-102, 76-5-103(1).

When Dockstader was originally charged, the State charged him with second-degree aggravated assault "in that defendant assaulted another and intentionally caused serious bodily injury, and used a dangerous weapon or other means or force likely to produce death or serious bodily injury, in violation of Section 76-5-102 and 76-5-103(1)." At the time of trial, the state proceeded against Dockstader for second-degree aggravated assault "in that defendant assaulted another and caused serious bodily injury, and used a dangerous weapon or other means or force likely to produce death or serious bodily injury, in violation of Section 76-5-102 and 76-5-103(1)." Dockstader defended the charge by claiming that his actions were justified by self-defense.

On July 15, 2015, the state criminal case was tried to the bench and the judge found Dockstader guilty of aggravated assault, a second-degree felony. At the conclusion of the bench trial, the state court made findings of fact on the record and entered judgment. The trial court found that Dockstader threw the first punch in the altercation and was not entitled to claim self-defense. Specifically, the court stated: "The Court, quite frankly, finds that there was a punch thrown, and then as several witnesses testified, that Mr. Dockstader got the 15 pound weight and finished him off. That's basically what Francisco Roa's testimony was. Mr. Brooks is on the bench, he never stood up. Taylor Dockstader hit Mr. Brooks first. When Dockstader hit him with the 15 pound weight, Mr. Brooks is already on the floor with his feet up on the bench." The judge also found it "quite persuasive" that Dockstader admitted to "Officer Carter that he overreacted, he shouldn't have done what he did," and that he knew "there would be

2

consequences for his actions." The state court sentenced Dockstader on August 25, 2015.

On February 6, 2017, Brooks brought a civil lawsuit against Dockstader in Fifth Judicial District Court for Washington County, Utah, seeking more than $300,000 in damages in connection with the October 14, 2014 incident which Brooks alleged left him permanently disabled with a permanent traumatic brain injury. Brooks' state court action against Dockstader originally alleged two alternative causes of action, negligence and assault and battery.

On March 1, 2017, Dockstader demanded that Plaintiff Owners Insurance Company defend and indemnify Dockstader from Brooks' civil suit under a homeowners insurance policy Owners issued to Dockstader's parents, Policy No. 48-819-745-00. At the time of the assault, Dockstader was twenty-one years old. The Policy provides that Owners "will pay all sums insured becomes legally obligated to pay as damages because of or arising out of bodily injury or property damages caused by an occurrence to which this coverage applies." The Policy defines the term "bodily injury" as "physical injury, sickness or disease sustained by a person including resulting death of that person." The Policy defines "occurrence" as "an accident that results in bodily injury or property damage." The Policy also contains an exclusion for "bodily injury or property damage reasonably expected or intended by the insured." The exclusion "applies even if the bodily injury . . . is of a different kind or degree . . . than that reasonably expected or intended."

In his deposition in the civil lawsuit, Dockstader claimed that he did not mean to strike Mr. Brooks, only scare him. Dockstader testified that he believed he had sufficient strength and control with weights to stop his swing and avoid hitting Brooks.

On February 28, 2018, Owners filed the Complaint in this case, seeking a declaratory

3

judgment that Owners has no duty to defend or indemnify Dockstader from the claims presented in Brooks' civil state court action. The Complaint alleges that Dockstader's assault on Brooks was not an "occurrence" covered by the policy because it was not an accident. In addition, Owners' alleges that Dockstader's assault, which was previously alleged and proven against Dockstader in the felony case against him, was excluded under the policy's exclusionary clause because it was reasonably expected or intended by the insured. Owners also asserts in its Complaint that it has no duty to defend Dockstader in Brooks' suit against him because the claims are not covered by the policy. Owners has been providing Dockstader a defense under a full reservation of rights.

On April 10, 2018, the parties in the state civil action stipulated to dismissal of Brooks' assault and battery cause of action. Based on the parties' stipulation to dismiss the intentional tort claim, Dockstader attempted to have Owners' declaratory judgment action in this court dismissed. However, on August 27, 2018, this court denied Dockstader's motion to dismiss. In the state court action, Owners rejected Brooks' three settlement demands for the Policy's $500,000 limit because this action regarding coverage was still pending. On September 25, 2018, Brooks and Dockstader entered into a stipulated judgment and assignment of Dockstader's claims against Owners, including a bad faith claim for refusal to settle within the policy limits. Brooks intervened in the present case on November 2, 2018, and filed a Third-Party Complaint against Owners on November 5, 2018.

## DISCUSSION

### Owners' Motion for Summary Judgment

Owners argues that it has no duty to defend or indemnify Dockstader under the terms of

4

the Policy because Dockstader's actions were not an accident. In interpreting the Policy, this court looks to Utah law. *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009). Under Utah law, "[a]n insurance policy is merely a contract between the insured and the insurer and is construed pursuant to the same rules applied to ordinary contracts." *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993). The insured bears the initial burden of showing that there is coverage for a particular claim under the policy. *See Utah Farm Bureau Ins. v. Dairyland Ins.*, 634 F.2d 1326, 1328 (10th Cir. 1980). The insurer then bears the burden of proving by a preponderance of the evidence that an exclusion to coverage applies. *LDS Hosp. v. Capitol Life Ins.*, 765 P.2d 857, 859-60 (Utah 1988).

In this case, the Policy covers bodily injury caused by an occurrence to which coverage applies. The Policy defines occurrence, in relevant part, as "an *accident* that results in bodily injury. . ." Dockstader and Brooks, therefore, have the burden of demonstrating that there is coverage under the Policy or, in other words, that there was an accident. Owners' claims that Dockstader's actions were not accidental as a matter of law and he cannot meet his burden of demonstrating an "accident" under the Policy. Dockstader and Brooks, however, argue that Dockstader did not intend to hit Brooks and the criminal conviction is not conclusive because intent was not a part of the charge.

The Policy does not define the term "accident" but Utah courts have addressed the issue before. In *N.M. ex rel Caleb v. Daniel E.*, 2008 UT 1, 175 P.3d 566, the Utah Supreme Court determined whether conduct could be considered accidental under a similar "occurrence" clause. In that case, eight-year-old Daniel swung his hockey stick at the padded shoulder of seven-year-old Caleb but he missed and hit Caleb in the head. In deciding whether this conduct could be

5

considered accidental and, therefore, an occurrence, the Utah Supreme Court explained:

> Although the policy itself does not define the term "accident," Utah case law has consistently defined this term in insurance policies: The word is descriptive of means which produce effects which are not their natural and probable consequences. . . . The probable consequence of the use of given means is the consequence which is more likely to follow from their use than it is to fail to follow. As effect is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds.

*Id.* 2008 UT at ¶¶ 6-7, 175 P.3d at 569-70. Under Utah law, there are two ways in which bodily injury can be deemed nonaccidental. "First harm or damage is not accidental if it is the result of actual design or intended by the insured." *Id.* And, "[s]econd, harm or damage is not accidental if it is the natural and probable consequence of the insured's act or should have been expected by the insured." *Id.* The first type is a fact question because it is based on subjective intent but the second type is generally a question of law because it is an objective standard–"what the average individual would expect to happen under the circumstances." *Id.*

Under the objective standard, the court considered "whether an average eight-year-old would view a nontrivial injury as the natural and probable consequence of swinging a hockey stick into the upper body of another child who was wearing hockey pads." *Id.* at ¶ 14, 175 P.3d at 572. The court found that he would not, but also considered "whether an average eight-year-old would perceive that the natural and probable result of his act would be to miss his mark and strike an unprotected area." *Id.* The court concluded that "[b]ecause of lack of experience, an eight-year-old is less likely than an adult to appreciate the potential danger of hitting an unintended area." Therefore, the court determined that "the average eight-year-old would not

6

expect that nontrivial bodily harm would be the natural and probable result of such an act." *Id.*

In this case, Dockstader was an adult and the court must consider whether an average individual would view a nontrivial injury as the natural and probable consequence of swinging a dumbbell at another close enough to scare the person. Dockstader testified in the civil trial that he believed he had the strength and control to merely scare Brooks with his swing. But, unlike a child, an adult is capable of perceiving that the natural and probable result of his act–swinging a dumbbell close enough to scare the other person–would be to miss his mark, fail to merely scare, and strike the person. The court concludes that an average adult would expect the probability of nontrivial harm as a result of swinging a dumbbell close enough to someone's head to scare them. Therefore, under the Utah Supreme Court's objective standard in *N.M.*, the bodily injury in this case was nonaccidental as a matter of law.

The parties dispute whether this court can consider the findings of the state criminal judge and whether issue preclusion applies. However, the case can be resolved apart from these issues. Accepting Dockstader's version of the facts, the court determined that Dockstader and Brooks could not objectively demonstrate an accident occurred under the Policy. With respect to the parties' disputes, however, the court notes that evidence of the final judgment of conviction is not hearsay if the judgment was entered after a trial, the crime was punishable by imprisonment for more than a year, and the evidence is admitted to prove any fact essential to the judgment. Fed. R. Evid. 803(22). Therefore, Dockstader and Brooks are incorrect when they state that all the evidence from the criminal trial is dicta and inadmissible hearsay. In addition, Dockstader made several statements against interest at the criminal trial that would be exceptions to hearsay. For example, Dockstader testified: "I walked past [Brooks], and then that's when he threw the

7

dumbbells at my feet, and I turned around and I hit him. I struck him in the head with a 5 pound dumbbell." Therefore, some evidence from the criminal trial would be admissible in this action.

Moreover, Dockstader relies heavily on the argument that there is no preclusive effect from the criminal case because intent was not an issue, but there is no intent at issue under the objective standard in *N.M.* The Tenth Circuit has held that "[r]elitigation in a civil action of an issue determined adversely to the defendant in a prior criminal proceeding is foreclosed." *Metros v. U.S. Dist. Court for Dist. of Colo.*, 441 F.2d 313, 316 (10th Cir. 1970).[1] In this case, the trial court found that Dockstader was not acting in self-defense because Dockstader threw the first punch, used a 15-pound dumbbell to "finish off" Brooks, and then admitted to police that he overreacted. Although the court did not rely on these facts in making its decision, the evidence supporting the criminal judge's determination that Dockstader's actions were not justified by self-defense would be admissible in this action.

With respect to the duty to defend under the Policy, the Policy only provides defense coverage for covered claims. Under such a Policy, the court can examine extrinsic evidence to determine whether the claim is covered. The court has viewed the evidence in this case in the light most beneficial to Dockstader and concluded that the Policy did not provide coverage for his actions. Because there is no coverage under the Policy, Owners' had no duty to defend.

Dockstader and Brooks contend that Brooks' claim for breach of fiduciary duty is independent of coverage and Owners' motion should be delayed or denied pending discovery.

---

[1] These cases merely apply the long-standing rule that "[i]n the case of a criminal conviction based on a jury verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment." *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 569 (1951).

However, Brooks did not properly file a motion or affidavit under Rule 56(d) of the Federal Rules of Civil Procedure.

Dockstader and Brooks also claim that Owners placed its interests above Dockstader's by refusing to pay Brooks' settlement demand for the policy limits and instead filing a declaratory judgment action. But Owners was acting in accordance with the Utah Supreme Court's recommendations. "Where the insurance carrier is uncertain over insurance coverage for the underlying claim, the proper course is for the insurance carrier to tender a defense and seek declaratory judgment as to coverage under the policy." *Summerhaze Co., L.C. v. Fed. Deposit Ins. Corp.*, 2014 UT 28, ¶ 38 n.89, 332 P.3d 908, 921 n.89. Owners followed this practice and there is no basis for a bad faith claim for refusal to settle a claim while a declaratory judgment action is pending regarding coverage.

In addition, the court finds no procedural problem with Owners providing Dockstader a defense in the Brooks' civil action before sending a reservation of rights letter. The Utah Supreme Court has recognized that "the insurer is entitled to a reasonable time to investigate the facts. However, the insurer is required to act seasonably in disclaiming liability, and it cannot delay its decision so long that the insured's rights are prejudiced thereby." *State Farm Mut. Auto. Ins. v. Kay*, 487 P.2d 852, 855 (1971). Therefore, Owners was entitled to a period of time to investigate the circumstances of the incident and to determine whether coverage would exist under the Policy. Responsibly, Owners provided a defense while it was doing that investigation. There is no set time frame for an insurer to disclaim coverage. However, there is no evidence in this case that Owners acted unseasonably. Moreover, neither Dockstader nor Brooks claim that they have been prejudiced by the timing of Owners' reservation of rights letter. Owners never

9

withdrew its defense of Dockstader in the Brooks civil suit. Therefore, the court finds no claim based on Owners' alleged delay in issuing a reservation of rights letter.

**CONCLUSION**

Based on the above reasoning, Plaintiff Owners Insurance Company's Motion for Summary Judgment [Docket No. 28] is GRANTED. Owners had no duty to defend or indemnify Dockstader under the Policy for Brooks' civil suit because Dosckstader's actions were not an accident under Utah law.

DATED this 14th day of March, 2019.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge